# Exhibit A:

# [Proposed] Plaintiff's Second Amended Complaint

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| RONNIE G. WIGGINS, <br><br> Plaintiff, <br><br> v. <br><br> BRIAN A. BLEDSOE, JOHN ADAMI, S.V. HEATH, JIM FLEMMING, TIM CRAWFORD, MICHAEL HORBERGER and THE UNITED STATES OF AMERICA, <br><br> Defendants. | CIVIL ACTION <br><br> Case No.: 3:11-cv-1298 |

## SECOND AMENDED COMPLAINT

Under the Eighth Amendment to the United States Constitution and the

Federal Tort Claims Act, Plaintiff Ronnie G. Wiggins brings this action for

damages against the Defendants, complaining and alleging as follows:

### Nature of the Case

1.      This is a civil action pursuant to *Bivens v. Six Unknown Named Agents of*

*Federal Bureau of Narcotics*, 403 U.S. 388 (1971), against Defendants Brian A.

Bledsoe, John Adami, S.V. Heath, Jim Flemming, Tim Crawford, and Michael

Hornberger in their individual capacity, and a negligence claim against the United

States pursuant to the Federal Tort Claims Act, 28 U.S.C. § 2761 *et seq.* by

Plaintiff Ronnie G. Wiggins. On July 16, 2009, Plaintiff was attacked in a

recreation cage by four other inmates while imprisoned on the Z-Block of the

1

United States Penitentiary in Lewisburg, Pennsylvania ("USP Lewisburg"). During this attack, Plaintiff was stabbed twenty-two times and suffered serious bodily injury resulting in surgery and a seven day hospital stay. At the time of the attack, each Defendant was an employed official of the Federal Bureau of Prisons and USP Lewisburg. As such, each Defendant was responsible for protecting Plaintiff's constitutional rights while Plaintiff was an inmate at USP Lewisburg, including the right to be free from vicious attacks by other inmates. Defendants had reason to know of the danger to Plaintiff because of longstanding separation requirements between Plaintiff and his attackers. Additionally, the Defendants present during the attack sat idly by while Plaintiff was brutally assaulted, and did not intervene until well after the attack was finished. Because of Defendants' failure to protect Plaintiff, he sustained life-threatening injuries which continue to affect him physically, emotionally, and psychologically. Plaintiff seeks compensatory and punitive damages, as well as attorney's fees, costs, and such other relief as the Court deems appropriate.

## Jurisdiction and Venue

2.     Plaintiff brings this action under the Eighth Amendment to the United States Constitution and *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971), and under the Federal Tort Claims Act, 28 U.S.C. § 2671, *et seq.*

3.      This Honorable Court has subject matter jurisdiction over the claims

presented herein pursuant to 28 U.S.C. §§ 1331, 1343, and 1346(b)(1).

4.      Venue is appropriate in this district pursuant to 28 U.S.C. §§ 1391(b) and

1402 because this is the district in which Plaintiff's claims arose.

5.      This Court has personal jurisdiction over each Defendant because it is

believed that at all times relevant to this action all Defendants were employed in

Lewisburg, Pennsylvania, and their acts and omissions caused the harm

complained of by Plaintiff in the Commonwealth of Pennsylvania.

## Parties

6.      Plaintiff Ronnie G. Wiggins is a citizen of the United States and is currently

an inmate at the United States Penitentiary at McCreary, Kentucky.  At all times

relevant to this action, Plaintiff was an inmate at USP Lewisburg, located at 2400

Robert F. Miller Drive in Lewisburg, Pennsylvania.

7.      Defendant Brian A. Bledsoe was at all times relevant to this action the

Warden of USP Lewisburg. He is responsible for overseeing and implementing

inmate housing and recreation placement decisions. Mr. Bledsoe is being sued in

his individual capacity.

8.      Defendant John Adami was at all times relevant to this action a Unit

Manager at USP Lewisburg. Mr. Adami was, in part, responsible for ensuring

inmate safety at USP Lewisburg and was involved in inmate housing and recreation placement. Mr. Adami is being sued in his individual capacity.

9.      Defendant S.V. Heath was at all times relevant to this action a Corrections Officer at USP Lewisburg with the ranks of Lieutenant and Special Investigation Supervisor. Lieutenant Heath was, in part, responsible for inmate housing and recreation placement. Ms. Heath is being sued in her individual capacity.

10.     Defendant Jim Flemming was at all times relevant to this action a Corrections Officer at USP Lewisburg, with the rank of East End Lieutenant. Mr. Flemming was, in part, responsible for inmate safety and overseeing inmate placement in cells and recreation areas so as to avoid conflict. Mr. Flemming is being sued in his individual capacity.

11.     Defendant Tim Crawford was at all times relevant to this action a Corrections Officer at USP Lewisburg. On July 16, 2009, Mr. Crawford served as the supervising officer of Z-Block. Mr. Crawford is being sued in his individual capacity.

12.     Defendant Michael Hornberger was at all times relevant to this action a Corrections Officer at USP Lewisburg with the title of Recreation Cage Supervisor. On July 16, 2009, Mr. Hornberger was stationed in the recreation area where the attack on Plaintiff occurred. Mr. Hornberger is being sued in his individual capacity.

13.     Defendant the United States of America oversees the Federal Bureau of

Prisons, which is responsible for the custody and care of federal inmates.

## Basis for Action

14.     Plaintiff has been a prisoner of the Federal Bureau of Prisons since 1990.

15.     Plaintiff arrived at USP Lewisburg on May 19, 2008 from the United States

Penitentiary at Victorville (USP Victorville) to participate in the Special

Management Unit (SMU) Program.

16.     Plaintiff was transferred to USP Lewisburg from USP Victorville in part

because of threats to his safety made by members of the Dirty White Boys gang.

17.     "Separatees" are inmates who must be kept separate at all times because of

known, substantial risks that violence would result if the inmates were in close

proximity to each other.

18.     When a new inmate arrives at USP Lewisburg, an intake interview is

performed where the inmate is forced to reveal gang allegiances and separation

needs.

19.     Upon his arrival from USP Victorville, Plaintiff participated in an intake

interview with officials from USP Lewisburg.

20.     At this interview, Plaintiff told the officials what his separation needs were,

including the fact that Plaintiff must be considered a separatee from any member of

the Dirty White Boys gang.

5

21.     Upon information and belief, cell assignments are determined by a committee of USP Lewisburg officials who take separatee issues into account when making decisions.

22.     Upon information and belief, the Cell Assignment Committee consisted of Bledsoe, Maiorana, Rear, Dunkelberger, Adami, Fosnot, Perrin, Heath, and Dreese at all times relevant to this action.

23.     Following Plaintiff's intake interview, USP Lewisburg officials issued a standing order, which all Corrections Officers and staff were required to follow, that Plaintiff was to be housed only in a single cell whenever possible. If Plaintiff had to be given a cellmate, that cellmate had to be pre-approved by the Cell Assignment Committee to confirm that he posed no threat to Plaintiff.

24.     This order was due primarily to the threat of violence towards Plaintiff.

25.     All Corrections Officers at USP Lewisburg were required to acknowledge and adhere to the separation needs of Plaintiff because of the known risks to his safety.

26.     The order described in Paragraph 36 was necessary because other prisoners, particularly those who had arrived from USP Victorville, were known separatees from Plaintiff.

27.     Following the institution of the order in May 2008, for a period of months, Plaintiff was only put in a cell by himself or with Jonathan Shull. Plaintiff was

later celled with other inmates besides Jonathan Shull on occasion, but only after

the inmate had been pre-approved and confirmed to not pose a danger to the

Plaintiff.

28.     Inmates who are members of the SMU at USP Lewisburg are given one hour

of recreation time a day.

29.     During the recreation time, each inmate is taken to a cage called a

"recreation cage" or "rec cage," where the inmate spends his or her one hour.

30.     The assignment of inmates to recreation cages is handled by the Corrections

Officers of each specific cell block, as well as the Cell Assignment Committee.

31.     These officers, by rule, are required to follow an inmate's known separation

needs when making these assignments. Officers are also required to consider their

own knowledge of specific problems and risks posed by putting certain inmates in

recreation cages together, and to avoid any substantial risk of violence by keeping

problematic inmates separate.

32.     From the time of the institution of the order referenced in Paragraph 36 in

May 2008 until July 15, 2009, Plaintiff was routinely only put in recreation cages

by himself or with a pre-approved cellmate. Starting in May 2009, it was also the

policy in B Block, where Plaintiff was housed, for inmates to only be placed in

recreation cages with their current cellmates.

33.     If the Plaintiff was to be considered for recreation with other inmates, a Lieutenant in charge was required to review the other inmates in the cage and sign off on Plaintiff's placement because of the known risks to Plaintiff.

34.     On July 13, 2009, Plaintiff was accused of misconduct in the B Block wing of USP Lewisburg, where he was housed in a single cell.

35.     As a result of this accusation, Plaintiff was told on July 14, 2009 that he was being transferred to Z-Block. Upon information and belief, the decision to move Plaintiff to Z-Block was made by the Cell Assignment Committee.  The move to Z-Block was scheduled for the morning of July 15, 2009.

36.     Z-Block housed known members of the Dirty White Boys, including inmates Josh Wren, Johnny Lane, Brent Layton, and Adam Martin, Plaintiff's four attackers on July 16, 2009.

37.     When Corrections Officers, including Defendant John Adami, came to Plaintiff's cell to inform Plaintiff of the impending move, Plaintiff, Jonathan Shull, and other inmates on the B-Block all immediately informed the Officers that Plaintiff could not be transferred to Z-Block because of the substantial risk of danger the move posed to Plaintiff.

38.     Defendant Adami directly stated to Plaintiff that all USP Lewisburg officials were aware of the threat that members of the Dirty White Boys posed to Plaintiff, and that he would not be put in a position that would expose him to any danger.

Adami told Plaintiff that he would be put in a basement cell in Z-Block, away from the cells housing the members of the Dirty White Boys.

39.    Adami further stated that Rear and Defendant Bledsoe were specifically involved in the decision to move Plaintiff.

40.    Either Yohe or Edinger removed Plaintiff from his cell in the morning of July 15, 2009 and escorted Plaintiff to Z-Block. Upon his arrival, Defendants Adami and Crawford informed Plaintiff that he would be celled for one night in the main area of Z-Block in a single cell, then moved to a basement cell away from the Dirty White Boy population of Z-Block.

41.    On the morning of July 16, 2009, either Yohe or Edinger returned to Plaintiffs cell, instructing Plaintiff that he was to be moved to the basement cell on Z-Block.

42.    Hepner was the Corrections Officer in charge of Z-Block on July 16, 2009, including the recreation cage area.

43.    During the transfer, either Yohe or Edinger informed Plaintiff that he was to be put in a recreation cage before being taken to his cell in the basement.

44.    Besides Rear, Yohe, Edinger and Hepner, Defendant Crawford, Defendant Flemming, Murray, Yost, Loss, Campbell, and Defendant Hornberger were also present in the cell block or recreation cage area of Z-Block at this time.

45.    Yohe and Edinger escorted Plaintiff through the recreation cage area.

46.     The recreation cage area contains 26 cages. At the time - were escorting

Plaintiff through the recreation cage area, every cage in the area was empty, save

for two. When Plaintiff asked why he was not simply placed in one of the empty

recreation cages, either Yohe or Edinger told Plaintiff "I was told where to put

you."

47.     Either Yohe or Edinger placed Plaintiff in one of only two recreation cage in

the yard that was occupied by other inmates. Plaintiff did not recognize the four

other inmates in the cage.

48.     Seconds after Yohe or Edinger placed Plaintiff in the cage, the four other

inmates began to surround Plaintiff, punch Plaintiff, and stab Plaintiff in his arm

and back. After being stabbed multiple times while still on his feet, the four men

forced Plaintiff to the ground.

49.     After Plaintiff was forced to the ground, he was held down while one or

more of the inmates stabbed Plaintiff with a metal knife or shank. Plaintiff was

stabbed at least twenty-two times.

50.     At all times, Defendants present in the cell block or recreation cage area of

Z-Block had the ability and the constitutional obligation to open the recreation

cage door and stop the attack. No Defendant took any action to halt the attack until

after Plaintiff had been stabbed at least twenty-two times, and was left bleeding on

the floor of the cage by his attackers.

51.     After the attack, Plaintiff discovered the identity of the other inmate

occupants of the recreation cage. They were all members of the Dirty White Boys,

and their membership in the gang was openly known by both inmates and

employees at USP Lewisburg.

52.     When Plaintiff was finally removed from the cage, he was taken to

Geisinger Medical Center in Danville, Pennsylvania, where he stayed for seven

days.

53.     During this seven-day period, Plaintiff was treated for at least twenty-two

stab wounds to his stomach, arms, back, hip, and face.

54.     While at the hospital, Plaintiff underwent surgery, which led to severe

gastrointestinal complications and an incisional hernia. A chest tube was inserted

between Plaintiff's ribs to reinflate his left lung. Plaintiff's wounds required ten

external sutures and 88 surgical staples.

55.     Plaintiff's hernia still has not been appropriately treated, and causes

significant pain and suffering up to the present. Plaintiff also suffers from nerve

damage in his lower back.

56.     In addition to the physical trauma, Plaintiff has endured severe emotional

and psychological pain and suffering following the attack of July 16, 2009.

Plaintiff has been diagnosed with Post Traumatic Stress Disorder and anxiety, and

suffers from both up to the present. Plaintiff has been prescribed medication and

undergoes regular therapy sessions to help treat these disorders.

## Count I
## Eighth Amendment: Deliberate Indifference to Risk of Harm

57.     Plaintiff alleges and incorporates by reference as if fully set forth herein the

allegations contained in the preceding paragraphs of this Amended Complaint.

58.     Plaintiff's right to be free from cruel and unusual punishment under the

Eighth Amendment to the United States was clearly established on July 16, 2009,

while an inmate of the Federal Bureau of Prisons.

59.     Defendants, acting under color of federal law, deprived Plaintiff of his

constitutional right to be free from cruel and unusual punishment.

60.     Defendants had advance warning of a threat to Plaintiff's safety from

members of the Dirty White Boys gang from the moment Plaintiff arrived at USP

Lewisburg.

61.     Acting with deliberate indifference to known threats and danger to Plaintiff,

Defendants caused Plaintiff to be moved to Z-Block, where members of the Dirty

White Boys were housed, and placed Plaintiff in a recreation cage with four

members of the Dirty White Boys, despite the obvious availability of empty

recreation cages and the standing order at USP Lewisburg that Plaintiff only be put

in recreation cages by himself or with pre-approved inmates.

62.     Defendants Bledsoe and Heath were deliberately indifferent to the serious risks of harm to Plaintiff because they knew that moving Plaintiff to Z-Block in close proximity to members of the Dirty White Boys posed a clear and excessive threat to Plaintiff's safety, and chose to disregard this knowledge and order that Plaintiff be moved to Z-Block.

63.     Defendant Bledsoe was aware prior to July 16, 2009 that SMU inmates face a substantial risk of serious harm from violent assaults in the USP Lewisburg recreation cages because of high levels of violence in the SMU recreation cages, including armed assaults in which inmates were attacked by inmates other than their cellmates.  Defendant Bledsoe personally prepared or received reports regarding these attacks.

64.     Despite being aware of the risks inmates faced as a result of his recreation cage policies, Defendant Bledsoe was deliberately indifferent when he failed to institute policies making recreation cages safer for inmates, such as requiring inmates to be placed in recreation cages with their cellmates.  If Bledsoe had acted in response to these repeated attacks, Mr. Wiggins would not have been attacked.

65.     Defendants Flemming, Crawford, and Hornberger were deliberately indifferent to the serious risk of harm to Plaintiff by failing to intervene, despite having the opportunity and duty to do so, when four inmates attacked Plaintiff in the recreation cage, punched and stabbed Plaintiff, dragged Plaintiff to the ground,

13

held Plaintiff down, and stabbed Plaintiff at least twenty-two times. These

Defendants were present in the cell block or recreation cage area of Z-Block when

the attack occurred, and watched the attack unfold. In doing so, these Defendants

chose to disregard the clear and excessive risk that Plaintiff would suffer serious

harm if the attack was allowed to continue unabated.

66.     Defendants' deliberate indifference caused serious injury to Plaintiff, and

therefore Plaintiff is entitled to relief.

## Count II
## Federal Tort Claims Act: Negligence

67.     Plaintiff alleges and incorporates by reference the allegations in the

preceding paragraphs of this Amended Complaint.

68.     Defendant the United States of America is responsible for the oversight of

its employees, which includes officers and staff at federal correctional facilities.

Pursuant to the Federal Tort Claims Act, the United States is liable for damages

caused by the negligent or wrongful acts of its employees acting within the scope

of their employment, under circumstances where the United States, if a private

person, would be liable in accordance with the laws of the Commonwealth of

Pennsylvania.

69.     Correctional officers and staff have a duty to protect inmates from harm

caused by other inmates. The staff at USP Lewisburg owed this duty to Plaintiff.

70.     Prison officials knew or should have known that Plaintiff faced an excessive

risk to his health and safety.

71.     Prison officials breached their duty to protect Plaintiff from harm by failing

to take any actions to protect him in the face of known risks to his safety.

72.     As a result of the prison staff's negligence and failure to accommodate

Plaintiff's safety, Plaintiff suffered serious personal injuries, pain and suffering,

and emotional and psychological distress.


## Jury Trial Demanded

73.     Pursuant to Fed. R. Civ. P. 38(b), Plaintiff demands a trial by jury for all

claims set forth above.

## Prayer for Relief

WHEREFORE, Plaintiff prays as follows:

1.     The Defendants be adjudged to have violated Plaintiff's right under the

Eighth Amendment of the United States Constitution to be free from cruel and

unusual punishment.

2.     That judgment is entered for Plaintiff against Defendants for nominal,

compensatory, and punitive damages, together with the costs of this litigation,

including reasonable attorney's fees, and any other equitable relief that the case

may require and that the Court may deem proper.

Respectfully Submitted,


/s/ Stephen D. Brown
Stephen D. Brown
Thomas Miller
Dechert LLP
Cira Centre
2929 Arch St.
Philadelphia, PA 19104
(215) 994-4000

Sean P. McConnell
Duane Morris LLP
30 S. 17th Street
Philadelphia, PA 19104
(215) 979-1947

*Attorneys for Plaintiff Ronnie G.
Wiggins*

Dated: July 17, 2015