# UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **WIGGINS,** | ) |
| | ) |
| | ) |
| **Plaintiff,** | ) **Case Number 3:11-cv-1298** |
| | ) |
| **v.** | ) **(Munley, J.)** |
| | ) |
| **BLEDSOE,** *et al.*, | ) |
| | ) |
| **Defendants.** | ) |
| | ) |

## PLAINTIFF'S PRE-TRIAL MEMORANDUM
## (EIGHTH AMENDMENT CLAIMS)

Pursuant to the Court's Scheduling Order (doc. 129) and Local Rule 16,

Plaintiff Ronnie G. Wiggins hereby submits this Pre-Trial Memorandum in

connection with his pending claims under the Eighth Amendment (*Bivens*) claims.[1]

---

[1]     Plaintiff is submitting a separate Pre-Trial Memorandum in connection with his
pending FTCA claims.

### A.   <u>BRIEF STATEMENT AS TO FEDERAL COURT JURISDICTION</u>

This court has jurisdiction to hear Plaintiff's Eighth Amendment claims under 28 U.S.C. § 1331, in accordance with *Bivens v. Six Unknown Named Agents of the Fed. Bureau of Narcotics*, 403 U.S. 388 (1971).

### B.    SUMMARY STATEMENT OF FACTS AND CONTENTIONS AS TO LIABILITY

## I.    Factual Background

### A.    Mr. Wiggins is Stabbed 22 Times

On the morning of July 16, 2009, Ronnie Wiggins, an inmate at the United States Penitentiary in Lewisburg, PA ("Lewisburg"), was savagely assaulted by four other inmates and stabbed 22 times with a 6.5-inch metal knife.  The lead up to the assault, the stabbing, and the guards' lackadaisical response in the aftermath are captured on video.  Mr. Wiggins is now seeking damages for the staggering combination of negligence and indifference on the part of Lewisburg officials that led directly to the assault and the life-threatening injuries he suffered.

### B.    The Extreme Danger at the Lewisburg Special Management Unit

The circumstances giving rise to this case began in 2007, when Mr. Wiggins was an inmate at USP Victorville.  While at Victorville, Mr. Wiggins and another inmate, both then members of the Dirty White Boys ("DWB") prison gang, assaulted two other DWB members.  Corrections staff at Victorville investigated the incident, and prepared a report explaining that DWB members were angry with Mr. Wiggins and planned to kill him if he returned to the compound at Victorville.

To protect Mr. Wiggins from these threats, staff at Victorville recommended that Mr. Wiggins be transferred to the Special Management Unit ("SMU") at Lewisburg.  The SMU was an experiment within the federal Bureau of Prisons to

remove dangerous inmates from the general population of other institutions and place them together in the SMU.  As Defendant Heath testified: "*A lot of times inmates' conduct at other institutions just catches up with them here at Lewisburg because we have everybody here.* All sorts, all the gangs."

SMU inmates were confined to their cells for 23 hours per day, with one hour per day spent in outdoor recreation ("rec") cages.  To protect the guards, the SMU had special rules in place limiting officers' ability to respond to attacks by one inmate on another inmate.  Guards were not permitted to intervene to stop an inmate on inmate attack until a lieutenant was present and the guards outnumbered the inmates.  Given the choice to limit guards' authority to stop violence once it started, the SMU had procedures in place to protect inmates from armed assaults by other inmates, given that "very disruptive and violent [inmates] have more of a tendency to always try to keep a weapon on them."

### C.    Mr. Wiggins' Mysterious Transfer to Z-Block

When Mr. Wiggins arrived at the Lewisburg SMU, he told corrections staff that he had been separated from white inmate groups based on his history at Victorville.  For 14 months after his arrival, Mr. Wiggins was celled alone and placed in a recreation cage by himself or with an individual he had approved, and was listed as a "Keep Away From" the Dirty White Boys gang.  Mr. Wiggins was

4

never placed in a rec cage with any member of the DWBs, and was consequently protected from assault by those individuals.

Mr. Wiggins, who had been safely living in another cell block, eventually became aware in the late spring and early summer of 2009 that members of the DWBs, including one from Victorville, were being housed on Z-Block.[2]  Mr. Wiggins repeatedly warned Lewisburg staff—including Defendants Adami, and Crawford—of the dangers he faced if he were ever celled or placed in a recreation cage with DWBs, especially those from USP Victorville.  Defendants have since testified that they could not recall whether those conversations took place, but did not deny that they happened.

Notwithstanding these warnings, Mr. Wiggins was transferred on July 15, 2009 to the same cell block (Z-Block) and same floor as his assailants.  The reasons for the transfer are unknown, and there is not a single document explaining why Mr. Wiggins was moved and not a single BOP employee has taken

---

[2]     Joshua Wren, a suspected DWB who had been at Victorville with Wiggins, was transferred to Lewisburg in May 2009.  Wren had a "demonstrated a history of creating an unsafe environment for staff and inmates."  Wren was assigned to the third floor of Z-Block at Lewisburg, along with his future co-assailants Johnny Layne, Adam Martin, and Brent Layton.  Martin and Layton were also suspected DWBs.  Almost immediately after arriving, Wren and Layton violently assaulted another inmate in a recreation cage. Lewisburg staff continued allowing Wren and Layton to rec together despite the fact that they had already coordinated an assault together.

responsibility for the move, even though Lewisburg Post Orders require documentation for inmate quarter changes.

### D.     The Attack on Mr. Wiggins on July 16, 2009

The next day, Mr. Wiggins was taken out to a rec cage where his four assailants were waiting for him, all Dirty White Boys.  Multiple nearby rec cages were empty, but Mr. Wiggins was inexplicably placed in the cage with four assailants.  After escort staff departed, an inmate in an adjacent rec cage passed a metal knife to one of Mr. Wiggins' waiting assailants.  Moments later, Mr. Wiggins was brutally assaulted and stabbed repeatedly.  Neither Defendant Hornberger—whose job was to supervise the rec cage—nor any other staff member remained in the recreation area during the assault.

Mr. Wiggins suffered severe injuries from the attack requiring hospitalization for seven days, two abdominal surgeries, the insertion of a chest tube to reinflate his left lung, continuing abdominal and hernia complications, and panic attacks and post-traumatic stress.  Those injuries, and related complications, have continued to the present day and have worsened over time.

## II.   Legal and Factual Issues (Eighth Amendment Claims)

Mr. Wiggins has *Bivens* claims against five individual defendants, all staff members at Lewisburg at the time of the assault, for violating his Eighth Amendment rights.  These defendants deliberately disregarded a substantial risk of

serious harm—*i.e.*, the risk that Mr. Wiggins would be assaulted by other inmates. Here, as outlined in the Court's opinion denying Defendants' motion for summary judgment, there is ample evidence that each of the five defendants ignored the risks that Mr. Wiggins faced from DWB gang members.  (Doc. 116 at 13–20.)

Mr. Wiggins is prepared to present evidence at trial in support of his Eighth Amendment claims, including:  (1) testimony from defendants and other USP Lewisburg staff about the dangerous conditions in the SMU and the risks of gang violence; (2) internal BOP documents detailing the specific risks Mr. Wiggins faced if he had any contact with DWBs; (3) testimony from Mr. Wiggins himself about the specific warnings he gave to defendants about the risks he faced from the DWBs; (4) testimony from defendants about their knowledge of the risk based on warnings from Mr. Wiggins or documents in their possession; (5) testimony regarding the steps defendants could have taken to protect Mr. Wiggins from assault; (6) expert testimony from Plaintiff's expert, Mark Bezy, detailing how sound correctional practice would have protected Mr. Wiggins from assault; and (7) medical evidence of Mr. Wiggins' past and ongoing injuries stemming from the assault.

## C.      STATEMENT OF UNDISPUTED FACTS

**SMU Background**

1.    In early 2009, the USP Lewisburg began converting from an open population penitentiary to a Special Management Unit (SMU) institution.

2.    Inmates in the Lewisburg SMU program were confined to their cells for twenty-three hours per day.

3.    Inmates in the Lewisburg SMU were offered one hour of recreation per day, which was spent in an outdoor recreation cage.

4.    In July 2009, USP Lewisburg policy and the size of the cages permitted up to six inmates to be placed in a recreation cage simultaneously.

5.    Recreation cages were the only place where SMU inmates could physically interact with inmates other than their cellmates.

6.    The USP Lewisburg SMU had procedures in place to separate inmates from inmates that might assault them.

7.    In many cases, separation decisions were informed by the Special Investigative Service ("SIS"), the investigative arm of the BOP.

8.    SIS investigates violent incidents between inmates, and also recommends which inmates should be separated from one another, both as cellmates and in recreation cages.

9.    The BOP can use its Central Inmate Monitoring System to separate inmates who might pose a danger to each other.

10.   Central Inmate Monitoring Cases (CIM) include "Separation" which includes inmates who may not be confined in the same institution unless the institution has the ability to prevent any physical contact between the inmates.

11.   An inmate may be classified as a CIM inmate at any time by a community corrections manager or by appropriate staff in the central office, regional office or institution.

12.   Periodic reviews of CIM assignments occur at program review.

13.     When staff believes that removal or modification of a CIM assignment is appropriate the institution's case management coordinator (CMC) and appropriate reviewing authority must be notified.

14.     An inmate's separation status may change throughout the duration of his incarceration and could occur for several reasons that include anyone they may be in a fight with; as a result of new information from another institution; or from an investigation at the institution by the Special Investigative Service (SIS) staff.

15.     CIM cannot be used to separate an inmate from a group or a gang unless the gang is classified as a "disruptive group."

16.     The Dirty White Boys (DWB) gang was not a disruptive group and thus Wiggins could not be a CIMS separation from the Dirty White Boys gang.

17.     A "KAF", or Keep Away From, is an unoffical institution specific way of adding an additional level of monitoring of inmates who the staff have reason to believe need to be kept away from a certain inmate or group of inmates.

18.     An inmate is not informed of his separatees or KAFs.

**<u>Ronnie Wiggins Background</u>**

19.     In 2007, Plaintiff Ronnie Wiggins was an inmate at USP Victorville.

20.     While at Victorville, Wiggins and another inmate, both then members of the DWBs assaulted two other DWB members.

21.     Lt. Hurte of Victorville SIS conducted an investigation of the Victorville incident in which he interviewed numerous inmates at Victorville.

22.     Lt. Hurte summarized those interviewed and made conclusions and recommendations to the Warden on Dec. 5, 2007 (the "Hurte Report").

23.     An investigation from USP Victorville dated December 5, 2007, indicated Ronnie Wiggins was a leader in the Dirty White Boy (DWB) prison gang.

24.     In 2009, prior to an inmate's arrival at USP Lewisburg, the BOP would prepare a designation packet which included a list of separations and what facility they're located in, inmate security and designation data forms,

disciplinary record, inmate profile, Inmate Movement History, Custody Classification Form and Security Threat Group History.

25.  The Hurte Report was part of Wiggins's transfer records, it was Lewisburg SMU practice that SIS review the transfer records prior to an inmate arriving at the SMU.

26.  Ronnie Wiggins arrived at USP Lewisburg on May 19, 2008, as a transfer from USP Victorville.

27.  When he arrived at USP Lewisburg on May 19, 2008, an intake screening was completed.

28.  One of the questions on Wiggins' intake screening form was "Do you know of any reason that you should not be placed in general population?" The form states "No" in response to this question.

29.  SIS Lieutenant Heath completed a threat assessment investigation on May 11, 2009, pertaining to the DWB gang. The investigation concluded that Wiggins was a leader of the DWB gang and was responsible for organizing assaults and hits while he was at USP Lewisburg.

30.  As part of the threat assessment, Heath reviewed the Hurte Report.

31.  SIS Heath recommended that Wiggins be separated from some individuals, none of which were the inmates who assaulted him on July 16, 2009.

32.  Wiggins indicated that there were times at USP Lewisburg from May 2008 through July 2008 that he had not gone to recreation.

33.  Wiggins was housed on G-Block from May 21, 2008 until May 18, 2009.

34.  While on G-Block, Wiggins generally changed cells every three weeks as required by Lewisburg rules.

35.  Wiggins was not assaulted while being housed on G-Block.

36.  On May 18, 2009, Wiggins was transferred to B-Block. He remained on the first floor of B-Block until July 15, 2009.

37.  While on B-Block, Wiggins changed cells once as required by Lewisburg rules.

38.  Wiggins was not assaulted while being housed on B-Block.

**The DWB Assault on Wiggins on July 16, 2009**

39.  On the morning of July 16, 2009, Wiggins was in cell number 307, on the third floor of Z-Block.

40.  There are no documents explaining who placed Wiggins on the third floor of Z-block or explaining why he was placed there on July 15, 2009.

41.  The BOP did not preserve the video taken by the camera on the third floor of Z-Block on the morning of July 16, 2009.

42.  On July 16, 2009, the Plaintiff was escorted and placed into a recreation pen.

43.  The Lewisburg SMU documented prisoner recreation assignments via the "rec and shower schedule." The officer creating the rec and shower schedule considers gang affiliations and separations.

44.  Inmates, including Wiggins, were not permitted to choose their recreation groups in the SMU program at USP Lewisburg in July of 2009.

45.  On July 16, 2009, four other inmates that were already in the recreation pen assaulted Wiggins resulting in injuries requiring him to transported to an outside medical facility.

46.  The attack on Wiggins consisting of punches, kicks, and more than twenty stab wounds delivered by all four inmates, as they passed the knife around from one to the other.

47.  Defendant Hornberger was assigned as the Z-Block recreation officer at the time that Ronnie Wiggins was stabbed.

48.  Staff arrived at the outside of the recreation pen in less than a minute after the assault began.

49.  After all of the assailants were placed in restraints and removed from the area, staff entered the recreation pen area and medical treatment of the Plaintiff was initiated.

50.  SIS Heath photographed Wiggins' injuries and noticed a sharpened metal weapon near the scene of the incident.

51.  SIS Lieutenant Heath and SIS Tech Dreese walked around the recreation pen to the weapon.

52.  SIS Lieutenant Heath photographed the weapon and Dreese picked it up as evidence.

53.  None of the inmates who assaulted him on July 16, 2009, were CIM separations from him.

54.  The BOP did not preserve the rec and shower schedule from July 16, 2009.

55.  Inmates, including Wiggins, were not permitted to review the rec and shower sheet to learn who was in their recreation group before they went to the recreation cage on July 16, 2009.

56.  One of Wiggins' assailants, Josh Wren, had been at USP Victorville at the same time as Wiggins and had recently been transferred to the Lewisburg SMU.

57.  All four of Wiggins' assailants were suspects or associates of the Dirty White Boys gang.

58.  Two of Wiggins' assailants (Wren and Brent Layton) had previously assaulted another inmate in a recreation cage in May 2009.

59.  Wiggins suffered severe injuries from the attack.

60.  As a result of the attack, Wiggins needed immediate surgery in the hospital to address his injuries and spent seven days in the hospital.

61.  Wiggins subsequently developed incisional hernias.

62.  As reflected in his BOP medical records dated after the assault, Wiggins was diagnosed with PTSD while in prison.

63.  As reflected in his BOP medical records dated after the assault, Wiggins suffered anxiety, nightmares, and other psychological injuries.

## D.    BRIEF DESCRIPTION OF DAMAGES

Mr. Wiggins is seeking compensation for the following injuries he sustained as a result of Defendants' conduct:

**Physical pain and suffering**:  Mr. Wiggins suffered severe pain at the time of and shortly after he was stabbed on July 16, 2009 and underwent surgery to treat injuries to his lungs and intestines.  He spent seven days in the hospital following the assault before being discharged. Contemporaneous medical records show that Mr. Wiggins' excruciating pain continued for months; he described his abdominal pain as feeling like "being stabbed with an ice pick" more than five months after the assault and reported abdominal pain (rated "10/10") two years after the assault. Mr. Wiggins' pain and suffering from the stabbing have continued to the present. Mr. Wiggins developed incisional hernias as a result of his injuries and subsequent surgery, which have continued to worsen up to the present day.  Mr. Wiggins has had <u>two</u> failed surgeries to address his hernias (one in 2011 and one in 2016).  Mr. Wiggins is currently scheduled to have a third hernia repair surgery some time in late 2018.

As a result of his hernias, Mr. Wiggins has had severe physical limitations for years that have been documented by prison medical officials.  These limitations are likely to continue indefinitely, even if Mr. Wiggins third surgery is successful.

**Emotional Distress**:  Prison doctors have consistently diagnosed Mr. Wiggins after the attack with anxiety, panic attacks, and post-traumatic syndrome, and he continues to receive counseling and medication for the emotional trauma resulting from the 2009 stabbing.  In addition, Mr. Wiggins will require counseling at least twice a month when he is released

**Future Lost Wages:** Mr. Wiggins is 53 years old. His current prison sentence is scheduled to end in 2022, but he could be paroled as early as October, 2018. Assuming he works until he is 65, he could work up to 12 years.  The physical injuries that Mr. Wiggins sustained in the attack, as well as the hernia that developed as a result of the attack, have severely limited Mr. Wiggins' ability to perform any kind of physical labor.

**Punitive Damages**:  Mr. Wiggins is entitled to punitive damages for his *Bivens* claims in light of the deliberate indifference of individual defendants to the risks he faced.

**Estimated Value of Damages**:  Mr. Wiggins is entitled to $750,000 for his physical and emotional pain and suffering as well as any lost wages associated with his ongoing disability.  Mr. Wiggins is also entitled to punitive damages in such amount as a jury may deem appropriate.

### E.      NAMES AND ADDRESSES OF WITNESSES (EIGHTH AMENDMENT CLAIMS)

Plaintiff anticipates that the following witnesses may be called at trial as part

of Plaintiff's Eighth Amendment Claims.[3]

| Witness | Party | Specialties/Qualifications (experts only) |
|---|---|---|
| Wiggins, Ronnie | Plaintiff | |
| Bezy, Mark | Plaintiff | 30-year correctional professional with 28 years of service with the Federal Bureau of Prisons, including as Warden. |
| Adami, John | Defendant | |
| Crawford, Timothy | Defendant | |
| Fleming, James | Defendant | |
| Heath, Suzanne | Defendant | |
| Hornberger, Michael | Defendant | |
| Ranck, Timothy | Third Party | |
| Dreese, Nelson | Third Party (Former defendant) | |
| Edinger, Gregory | Third Party (Former defendant) | |

---

[3]      Plaintiff is currently incarcerated in Texas state prison.  His current address is Telford Unit, 3899 Hwy 98, New Boston, TX 75570.  Plaintiff does not yet have address information for the (current and former) BOP witnesses.

| | | |
|---|---|---|
| Fosnot, James | Third Party (Former defendant) | |
| Hepner, James | Third Party (Former defendant) | |
| Murray, Jason | Third Party (Former defendant) | |
| Rear (Bahre), Krista | Third Party (Former defendant) | |
| Yost, Thomas | Third Party (Former defendant) | |
| Campbell, Dennis | Third Party (Former defendant) | |
| Bledsoe, Bryan | Third Party (Former defendant) | |
| Buchanan, Ralph | Third Party | |

### F.   SUMMARY OF TESTIMONY OF EACH EXPERT WITNESS

Plaintiff's Expert Mark Bezy, a 30-year BOP veteran and former Warden, will opine on whether proper procedures and sound correctional judgment were observed by corrections staff at USP Lewisburg in: (1) the creation and operation of Lewisburg's SMU program; (2) the transfer of Mr. Wiggins from B-Block to Z-Block on July 15, 2009; (3) the decision to assign Mr. Wiggins to the third floor of Z-Block; (4) the decision to rec Mr. Wiggins with four members of his former gang; and (5) allowing the subsequent assault of Mr. Wiggins with a nearly seven-inch metal knife.

### G.   SPECIAL COMMENT ABOUT PLEADINGS AND DISCOVERY

1.     Plaintiff Wiggins continues to suffer from injuries caused by Defendants' conduct.  Additional discovery may be necessary to evaluate and document the current and future state of Mr. Wiggins' injuries, including ongoing medical treatment for those injuries.

2.     Plaintiff's counsel recently became aware that a current inmate in the federal prison system may have material information regarding the conduct of two Defendants in this case, including their involvement in the decision to place Mr. Wiggins in a recreation cage with his assailants.  Plaintiff's counsel also has reason to believe that this information was not revealed sooner because of Defendants' own misconduct.  Plaintiff's counsel are serving Requests for Production of Documents on the BOP to help evaluate this information.

**H.** **SUMMARY OF LEGAL ISSUES INVOLVED AND LEGAL AUTHORITIES RELIED UPON (EIGHTH AMENDMENT CLAIMS)**

The law surrounding Plaintiff's Eighth Amendment claims is well-established and was discussed in the Court's decision denying summary judgment on these claims (Doc. 116). In short, the Eighth Amendment's prohibition of cruel and unusual punishment imposes duties on prison officials to provide prisoners with the basic necessities of life, such as food, clothing, shelter, sanitation, medical care and personal safety. *See Farmer v. Brennan*, 511 U.S. 825, 832 (1994). Under *Farmer* and Third Circuit precedent, prison officials are liable if they were aware of a substantial risk to inmate safety and deliberately disregarded that risk. *See Beers-Capitol v. Whetzel*, 256 F. 3d 120, 125 (3d Cir. 2001).

## I.   <u>**STIPULATIONS DESIRED**</u>

Counsel for Plaintiff and Defendants will continue to meet and confer regarding their respective exhibits, and expect few, if any disputes to arise regarding the admissibility and/or authenticity of those exhibits.  The parties propose to submit final exhibit lists and copies of the exhibits to the Court, together with any stipulations or objections, ten days before the start of trial.

## J.    ESTIMATED NUMBER OF TRIAL DAYS

Plaintiff estimates that seven to eight days will be needed for a jury trial on Plaintiff's Eighth Amendment claims.

### K.   OTHER MATTER PERTINENT TO THE CASE TO BE TRIED

None at this time.

## L.   **SCHEDULE OF EXHIBITS**

Plaintiff's schedule of exhibits is attached as Appendix 1.

## M.    SPECIAL VERDICT QUESTIONS

None at this time.

## N.     <u>DEFENSE COUNSEL STATEMENT (N/A)</u>

Not Applicable.

### O.  <u>LOCAL RULE 30.10</u>

Plaintiff's counsel certifies that he has conferred with Defendants' counsel and has no objections at this time to the depositions and videotapes subject to this Court's protective order.  Plaintiff reserves the right to object to any use of depositions and video at the time of trial.

## P.     REQUEST FOR FINDINGS OF FACT AND LAW

Not applicable with respect to Plaintiff's Eighth Amendment Claims, which will be tried before a jury.

*    *    *    *

Respectfully submitted,

/s/ Stephen D. Brown
Stephen D. Brown (PA 27829)
Thomas J. Miller (PA 316587)
Julia Chapman (PA 315959)
Dechert LLP
Cira Centre
2929 Arch Street
Philadelphia, PA 19104
Main: (215) 994-4000
Fax: (215) 994-2222
stephen.brown@dechert.com
thomas.miller@dechert.com
julia.chapman@dechert.com

Sean P. McConnell (PA 307740)
Duane Morris LLP
30 South 17th Street
Phone: 215-979-1947
Fax: 215-689-4586
spmconnell@duanemorris.com

*Counsel for Plaintiff Ronnie Wiggins*

## APPENDIX 1:  LIST OF EXHIBITS

**Case Caption:  Wiggins v. Bledsoe**          **Case No. 3:11-cv-1298**
**Middle District of Pennsylvania**          **Judge Munley**

| DEF | PTF | Bates | Description of Object or Item | Identified | Evidence | Ruling | Witness on Stand |
|---|---|---|---|---|---|---|---|
| | PX-001 | D-0001 | BOP Health Services, Clinical Encounter (October 11, 2011) | | | | |
| | PX-002 | D-0035 | BOP Health Services Health Problems (multple dates) | | | | |
| | PX-003 | D-0051 | BOP Initial Assessment Form (June 8, 2011) | | | | |
| | PX-004 | D-0104 | BOP Health Services, Clinical Encounter (June 30, 2011) | | | | |
| | PX-005 | D-0121 | BOP Health Services, Clinical Encounter (June 8, 2011) | | | | |
| | PX-006 | D-0129 | BOP Health Services, Clinical Encounter (April 12, 2011) | | | | |
| | PX-007 | D-0183 | BOP Health Services, Clinical Encounter (July 26, 2010) | | | | |
| | PX-008 | D-0273 | Utilization Review Committee, USP Lewisburg Health Services (March 23, 2011) | | | | |
| | PX-009 | D-0295 | BOP Health Services, Clinical Encounter (June 9, 2010) | | | | |
| | PX-010 | D-0307 | BOP Health Services, Clinical Encounter (December 22, 2009) | | | | |

| | | | | | | |
|---|---|---|---|---|---|---|
| PX-011 | D-0328 | BOP Health Services, Clinical Encounter (July 30, 2009) | | | | |
| PX-012 | D-0339 | BOP Health Services, Clinical Encounter (July 17, 2009) | | | | |
| PX-013 | D-0340 | BOP Health Services, Clinical Encounter (July 16, 2009) | | | | |
| PX-014 | D-0350 | Ronnie Wiggins, List of Medications (July 1, 2010) | | | | |
| PX-015 | D-0423 | Ronnie Wiggins Medical Evaluation (July 16, 2009) | | | | |
| PX-016 | D-0427 | Discharge Summary, Geisenger Medical Center (July 23, 2009) | | | | |
| PX-017 | D-0445 | Geisenger Medical Center Operative Report (July 16, 2009) | | | | |
| PX-018 | D-0520 | BOP Psychology Data System Evaluation (December 1, 2010) | | | | |
| PX-019 | D-0555 | Ronnie Wiggins Psychology Evaluation (June 11, 2009) | | | | |
| PX-020 | D-0679 | USP Lewisburg Escort Procedures | | | | |
| PX-021 | D-0713 | Bureau of Prisons Referral of an Inmate Criminal Matter, 7/16/2009 | | | | |
| PX-022 | D-0718 | Witness memos, Ronnie Wiggins Assault | | | | |
| PX-023 | D-0839 | Chain of Custody Log | | | | |
| PX-024 | D-0848 | Photos of the knife and recreation cage post assault | | | | |

| | PX-025 | D-0863 | Special Management Unit Inmate Handbook | | | | |
|---|---|---|---|---|---|---|---|
| | PX-026 | D-4338 | USP Lewisburg General Post Orders | | | | |
| | PX-027 | D-4378 | USP Lewisburg Special Management Unit, Special Post Orders, Z Block | | | | |
| | PX-028 | D-4433 | USP Lewisburg Post Orders, Z-Block Recreation Officer | | | | |
| | PX-029 | D-4938 | Photograph of Knife Used to Stab Ronnie Wiggins | | | | |
| | PX-030 | None | U.S. Dept. of Justice, Bureau of Prisons Program Statement: Special Management Units | | | | |
| | PX-031 | None | Video titled by BOP, "ASSAULT IN SHU REC 7-16-09_C-286 Z OUTSIDE REC #11…083036.avi | | | | |
| | PX-032 | None | Video Titled by BOP, "HANDING WEAPON FOR ASSAULT 7-16-09_C-287 Z OUTSIDE REC #12…082136.avi" | | | | |
| | PX-033 | None | USP Lewisburg Special Management Unit, Special Post Orders, Z Block (Bezy Report Exhibit D) | | | | |
| | PX-034 | None | Wiggins Current Patient Restrictions and EMR Medication Print Pass (January 19, 2018) [Provided to Defendants and Magistrate Judge during Mediation] | | | | |

| | PX-035 | Med18 | BOP Health Services, Clinical Encounter (August 12, 2010) [Provided to Defendants and Magistrate Judge during Mediation] | | | | |
|---|---|---|---|---|---|---|---|
| | PX-036 | Med20 | BOP Health Services, Clinical Encounter (September 6, 2010) [Provided to Defendants and Magistrate Judge during Mediation] | | | | |
| | PX-037 | Med34 | St. Mary's of Scott County Consultation Report (November 8, 2011) [Provided to Defendants and Magistrate Judge during Mediation] | | | | |
| | PX-038 | Med38 | Scott County Hospital Operative Report (December 13, 2011) [Provided to Defendants and Magistrate Judge during Mediation] | | | | |
| | PX-039 | D-0585 | USP Lewisburg Institutional Supplement | | | | |
| | PX-040 | D-0606 | Ronnie Wiggins Inmate Quarters History | | | | |
| | PX-041 | D-0708 | Ronnie Wiggins Lewisburg Intake Screening Form | | | | |
| | PX-042 | D-0741 | Ronnie Wiggins Inmate Separatee Information | | | | |
| | PX-043 | D-0886 | USP Victorville Transfer Application and SIS Report | | | | |
| | PX-044 | D-0899 | Joshua Wren Lewisburg Referral | | | | |
| | PX-045 | D-0903 | Ronnie Wiggins CIM Separatee Information | | | | |

| | PX-046 | D-0965 | Bureau of Prisons Form 950 | | | | |
|---|---|---|---|---|---|---|---|
| | PX-047 | D-0987 | Lewisburg Dirty White Boys Threat Assessment | | | | |
| | PX-048 | D-1921 | Bureau of Prisons Form 950 | | | | |
| | PX-049 | D-2274 | Wiggins Lewisburg Intake Screening Form | | | | |
| | PX-050 | D-2339 | Wiggins Administrative Detention Order | | | | |
| | PX-051 | D-2383 | Bureau of Prisons Form 950 (May 19, 2008) | | | | |
| | PX-052 | D-2399 | Bureau of Prisons Form 950 | | | | |
| | PX-053 | D-3143 | Bureau of Prisons Form 292 (September 2001) | | | | |
| | PX-054 | D-3146 | Bureau of Prisons Form 292 (August 2001) | | | | |
| | PX-055 | D-3150 | Bureau of Prisons Form 292 (July 2001) | | | | |
| | PX-056 | D-3151 | Bureau of Prisons Form 950 | | | | |
| | PX-057 | D-3202 | Bureau of Prisons Form 292 (December 1996) | | | | |
| | PX-058 | D-3203 | Bureau of Prisons Form 292 (November 1996) | | | | |
| | PX-059 | D-3213 | Bureau of Prisons Form 292 (June 1996) | | | | |

| | | | | | | |
|---|---|---|---|---|---|---|
| PX-060 | D-3214 | Bureau of Prisons Form 950 | | | | |
| PX-061 | D-3465 | Ronnie Wiggins DHO Report | | | | |
| PX-062 | D-3479 | Request for Transfer/Application of Management Variable | | | | |
| PX-063 | D-3517 | Card Files regarding previous assault committed by Wiggins' assailants | | | | |
| PX-064 | D-3576 | Assailant Layne Inmate Profile | | | | |
| PX-065 | D-3611 | Joshua Wren Assignment History Report | | | | |
| PX-066 | D-3627 | Assailant Layton Inmate Profile | | | | |
| PX-067 | D-3647 | Assailant Martin Inmate Profile | | | | |
| PX-068 | D-3595 | Assailant Wren Inmate Profile | | | | |
| PX-069 | D-3765 | Recreation Cage Work Order | | | | |
| PX-070 | D-4275 | USP Lewisburg Incident Report 8/27/2008 | | | | |
| PX-071 | D-4280 | USP Lewisburg Incident Report 9/23/2008 | | | | |
| PX-072 | D-4285 | USP Lewisburg Incident Report 3/16/2009 | | | | |
| PX-073 | D-4290 | USP Lewisburg Incident Report 5/11/2009 | | | | |

| | PX-074 | D-4295 | USP Lewisburg Incident Report 5/12/2009 | | | | |
|---|---|---|---|---|---|---|---|
| | PX-075 | D-4300 | USP Lewisburg Incident Report 5/12/2009 | | | | |
| | PX-076 | D-4305 | USP Lewisburg Incident Report 5/18/2009 | | | | |
| | PX-077 | D-4310 | USP Lewisburg Incident Report 6/8/2009 | | | | |
| | PX-078 | D-4315 | USP Lewisburg Incident Report 6/16/2009 | | | | |
| | PX-079 | D-4320 | USP Lewisburg Incident Report 7/3/2009 | | | | |
| | PX-080 | D-4326 | USP Lewisburg Incident Report 7/7/2009 | | | | |
| | PX-081 | D-4332 | USP Lewisburg Incident Report 7/15/2009 | | | | |
| | PX-082 | D-4939 | Ralph Buchanan Inmate Housing Records | | | | |
| | PX-083 | None | Copy of Wiggins Request to Lt. Fleming | | | | |
| | PX-084 | None | Discipline statistics from USP Lewisburg for period August 2008 to December 2009 (Bezy Report Exhibit E) | | | | |
| | PX-085 | None | Warden's Administrative Remedy responses (563782-F1; 545401-F1) (Bezy Report) | | | | |
| | PX-086 | None | Individual Defendants' and United States of America's Responses to Plaintiff's First Request for Interrogatories Per Court Order | | | | |

## <u>CERTIFICATE OF SERVICE</u>

I, Thomas J. Miller, do hereby certify that the foregoing was sent via the

Court's ECF filing system on August 28, 2018 to the following counsel of record:

       Timothy Judge, Esquire
       Assistant United States Attorney
       William J. Nealon Federal Building and Courthouse
       235 N. Washington Avenue
       P.O. Box 309
       Scranton, PA 18503
       Timothy.Judge@usdoj.gov

                    /s/ Thomas J. Miller
                    Thomas J. Miller