# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **RONNIE G. WIGGINS,** | : | |
| **Plaintiff** | : | |
| v. | : | CIVIL NO. 3:11-CV-1298 |
| **BRIAN A. BLEDSOE, et al.,** | : | (Judge Munley) |
| **Defendants** | : | |

## ORDER

**Background**

Ronnie Wiggins filed this combined Bivens/Federal Tort Claims Act (FTCA) action regarding his prior confinement at the United States Penitentiary, Lewisburg, Pennsylvania (USP-Lewisburg).[1] All remaining parties are represented by counsel. Remaining Defendants, with respect to the Bivens portion of the second amended complaint, are the following USP-Lewisburg officials: Warden Brian Bledsoe; Unit Manager John Adami; Lieutenants S. Heath and Jim Fleming; as well as Correctional Officers Tim Crawford and Michael Hornberger. The United States of America is the Defendant as to the FTCA claim.

Wiggins is a former affiliate of the Dirty White Boys (DWB) gang and held a leadership position within that organization. While previously confined at the United

---

[1] Plaintiff was last known to be confined at the United States Penitentiary, Terre Haute, Indiana.

1

States Penitentiary, Victorville, California (USP-Victorville) in 2007, Wiggins and another inmate allegedly stabbed two members of the DWBs. As a result of his involvement in that incident, Plaintiff was allegedly targeted for retribution by other DWB members .

In response to those threats, Wiggins was transferred to USP-Lewisburg on May 19, 2008 and placed in the prison's Special Management Unit (SMU). SMU prisoners receive one (1) hour of daily recreation in a recreation cage.

On July 15, 2009, Plaintiff was sent to the third floor of Z Block. It is asserted that this transfer was initiated without the usual internal documentation purportedly per a determination by Unit Manager Adami. When advised of the planned transfer, Plaintiff states that he informed Adami and other staff that such a transfer would pose a threat to his safety as there were inmates on Z block's third floor who were DWB members including one who had recently been transferred from USP-Victorville. Adami purportedly responded that Plaintiff would only be on the upper floor for one night and would then be moved to Z Block, basement floor the following day.

On July 16, 2009, Plaintiff was removed from his cell purportedly without explanation and was placed in a USP-Lewisburg Z Block six person recreation cage which was already occupied by four other inmates who were apparently unknown to the Plaintiff.

The four prisoners in the recreation cage were purportedly known members or associates of the DWB gang. After entering the recreation cage, the Plaintiff was attacked

and stabbed twenty-two (22) times with a metal knife.  Plaintiff suffered serious injuries which required surgery and a one week hospitalization.

Wiggins contends that there was a failure to protect his safety because his placement in the recreation cage put him in harm's way and there was a failure to sweep the recreation area for any contraband on the day of the attack.  The Defendants who were present at the time of the attack also allegedly failed to timely intervene when it began.

Presently pending are two motions in limine filed by the Plaintiff.  See Docs. 133 & 134.  Both motions are opposed.

**Discussion**

**Criminal History**

Plaintiff's initial motion in limine (Doc. 133) seeks to exclude the use of evidence pertaining to Plaintiff's prior convictions for either impeachment purposes or use as substantive evidence.  Wiggins notes that his criminal convictions are over ten (10) years old and although his criminal history is extensive including murder and firearm convictions, he has no convictions which involve crimes of dishonesty or false statement.

Defendants counter that the criminal history evidence with respect to two of Wiggins' criminal convictions is relevant and admissible to allow a proper credibility assessment and for the purpose of supporting their claims as to the steps taken by prison officials in managing Wiggins during his placement in the USP-Lewisburg SMU.  The two convictions are described as being a firearms charge and a state murder conviction.

It is undisputed that Wiggins' testimony in this matter is critical.  As such, an

evaluation of Wiggins' credibility will be part of the decision making process. The prejudicial effect of the introduction of evidence of Plaintiff's conviction for murder and a firearms offense as impeachment evidence is both obvious and substantial. Simply put, there is a considerable danger that the jury could reject Plaintiff's account of the events at issue solely out of outrage for his criminal convictions.

Defendants concede that the two criminal convictions at issue do not involve fraud or dishonesty as contemplated under Federal Rule of Civil Procedure 609(a)(2). See Doc. 135, p. 4. Moreover, the two convictions are also admittedly more than ten (10) years old and as such are only admissible in rare circumstances. See Warren v. Township of Derry, 2007 WL 2120043 *2 (M.D. Pa. July 20, 2007)(Conner, J.)

Since the probative value of evidence of two prior criminal convictions is far outweighed by the potential for significant prejudicial effect, the use of Wiggins' criminal convictions for the purpose of allowing a proper credibility assessment will not be permitted.

Based upon the circumstances of this case, the jury will know that Wiggins has been convicted of a crime, incarcerated in a federal correctional facility, affiliated with a prison gang, and that prison officials felt that he required closer supervision which led to the inmate's placement in the USP-Lewisburg SMU. Under these circumstances, preclusion of evidence of Plaintiff's murder and firearms convictions is warranted. Any additional information such as evidence of Plaintiff's underlying criminal history, including his murder and firearm convictions, has marginal relevance with respect to

4

whether there was a failure by prison officials to protect his safety and as to his credibility as a witness.

Pursuant to the above discussion, Plaintiff's motion in limine will be granted with the provision that Defendants may submit evidence showing that Wiggins was deemed to be a prisoner requiring closer supervision which warranted his placement in the SMU.[2] Furthermore, in the event that Plaintiff were to testify that he had no history of assaultive behavior, use of Wiggins' state murder conviction by Defendants for purposes of impeachment by contradiction as contemplated under Federal Rules of Evidence 609 and 403 may be appropriate. See United States v. Gilmore, 553 F.3d 266, 271 (3d Cir. 2009).[3]

**Inmate Disciplinary Records**

Plaintiff has also filed a motion in limine (Doc. 134) requesting that his prison disciplinary records be excluded because they are irrelevant and unduly prejudicial.

---

[2] The parties are reminded that a court's ruling with respect to a motion in limine is preliminary in nature subject to change based upon the evidence presented at trial. See Pinkney v. Thomas, No. 1:07-CV-186, 2008 WL 4514830, at *1 (N.D. Ind. Oct. 7, 2008).

[3] Federal Rule of Evidence 609(b) provides in relevant part that impeachment by evidence of conviction of a crime:
> **Time limit.** Evidence of a conviction under this rule is not admissible if a period of more then ten years has elapsed since the date of the conviction or of the release of the witness from the confinement imposed for that conviction, whichever is the latest date, unless the court determines, in the interests of justice, that the probative value of the conviction supported by specific facts and circumstances outweighs its prejudicial effect. ..."

Defendants argue that Wiggins' entire disciplinary record is relevant as it shows that he was still a member and leader of the DWBs.

The inmate disciplinary records of Wiggins may not be used to attack Plaintiff's credibility. However, some of the Plaintiff's alleged institutional misbehavior, specifically, Wiggins' assault of two inmates at USP-Victorville which was allegedly the motivating factor behind his USP-Lewisburg transfer, Plaintiff's alleged need for protection and any disciplinary charges directly stemming from the incident which is the basis for this action, are relevant. However, only the introduction of Wiggins' institutional disciplinary records pertaining to either the USP-Victorville incident or directly relating to the assault of Wiggins at USP-Lewisburg will be allowed.

It also appears that any institutional records from USP-Lewisburg, including a May 11, 2009 threat assessment, are admissible for the limited purpose of showing that Plaintiff was still considered to be a member of the DWBs at the time of attack (and therefore potentially undermining the failure to protect claim) are arguably relevant and admissible as they could negate Plaintiff's claim that he should not have been placed in a recreation cage with other DWB members.

All other portions of Plaintiff's institutional disciplinary records lack sufficient relevance to the extent that their introduction would outweigh potential prejudicial effect and as such introduction of those records will be excluded. An appropriate Order will enter.

**AND NOW**, to wit, this 27th day of November 2018, **IT IS HEREBY ORDERED**.

1. Plaintiff's motion in limine (Doc. 133) is **GRANTED**. Preclusion of evidence of Plaintiff's murder and firearms convictions is warranted.
2. The Plaintiff's second motion in limine (Doc. 134) is **PARTIALLY GRANTED**. Only the introduction of any institutional disciplinary records directly pertaining to Wiggins' involvement in either the underlying USP-Victorville incident or the USP-Lewisburg incident which resulted in the stabbing of Wiggins will be allowed.

**BY THE COURT:**

<u>s/James M. Munley</u>
**JUDGE JAMES M. MUNLEY**
**United States District Court**