### UNITED STATES DISTRICT COURT
### MIDDLE DISTRICT OF PENNSYLVANIA

**RONNIE G. WIGGINS,**                    **:**

                                          **:**

      **Plaintiff**                 **CIVIL ACTION NO. 3:11-1298**

                                          **:**

      **v**

                                          **:**      **(JUDGE MANNION)**[1]

**BRIAN A. BLEDSOE,** *et al.,*

                                          **:**

      **Defendants**

### MEMORANDUM

### I.    BACKGROUND[2]

On July 12, 2011, plaintiff, Ronnie G. Wiggins, formerly an inmate confined in the United States Penitentiary, Lewisburg, ("USP-Lewisburg"), Pennsylvania, filed the above captioned Bivens[3] action pursuant to 28 U.S.C. §1331, as well as tort action pursuant to the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §2671, *et seq.* (Doc. 1). Plaintiff filed an amended complaint on November 22, 2011. (Doc. 15). On August 31, 2015, plaintiff was allowed to file a second amended complaint ("SAC"). (Doc. 91-1). As such, plaintiff is proceeding on his SAC.

Plaintiff essentially alleges that prison staff at USP-Lewisburg failed to

---

[1]This case was reassigned to the undersigned on March 13, 2019.

[2]Since the background and facts of this case are stated in the court's November 30, 2017 Memorandum, they shall not be fully repeated herein (Doc. 116). See also trial briefs of the parties. (Docs. 137-140).

[3]Bivens v. Six Unknown Agents of the Federal Bureau of Narcotics, 403 U.S. 388, 397 (1971).

protect him when he was attacked and stabbed 22 times in July of 2009 by other inmates, and that they failed to intervene during the attack, in violation of his constitutional rights. The remaining individual defendants with respect to plaintiff's constitutional claims under Bivens are Unit Manager John Adami, SIS Lieutenant S.V. Heath, Lieutenant John Fleming, CO Tim Crawford, and CO Michael Hornberger. Plaintiff also alleges that the United States was negligent since it beached its duty to protect him. Specifically, plaintiff alleges that prison officials knew or should have known that he faced an excessive risk to his safety and they negligently breached their duty by failing to take necessary actions to protect him.

The trial in this case is scheduled to commence on September 17, 2019.

On July 29, 2019, nine years after plaintiff filed his amended FTCA administrative tort claim, plaintiff filed a motion to increase the *ad damnum* damages amount in his claim from $750,000 to $1.5 million. (Doc. 154). The motion has been briefed and exhibits, (Docs. 155-1, 159-1 & 159-2), have been filed. Based on the following, plaintiff's motion will be **GRANTED**.

## II.   DISCUSSION

As a prerequisite to suit under the FTCA, a claim must first be presented to the federal agency and be denied by the agency, or be deemed to be denied. Specifically, [u]nder the FTCA, any party asserting a claim for money damages arising out of the negligent or wrongful act of a government

employee must first file a claim with the administrative agency at issue."

Rodriguez v. Department of the Army, 2018 WL 935429, *3 (D.N.J. Feb. 16,

2018) (citations omitted).

Section 2675(a) of Title 28, United States Code, provides in pertinent

part:

> An action shall not be instituted against the United States for money damages for injury or loss of property or personal injury ... unless the claimant shall have first presented the claim to the appropriate Federal agency and his claim shall have been finally denied by the agency in writing and sent by certified or registered mail. The failure of the agency to make final disposition of a claim within six months after it is filed shall, at the option of the claimant any time thereafter, be deemed a final denial of the claim for purposes of this section....

The plaintiff has the burden of demonstrating that the agency actually

received the administrative claim. Lightfoot v. United States, 564 F.3d 625 (3d

Cir. 2009). This burden rests with the plaintiff because, in general, the United

States enjoys sovereign immunity from suit unless it otherwise consents to be

sued. White–Squire v. U.S. Postal Serv., 592 F.3d 453, 456 (3d Cir. 2010).

The United States' "consent to be sued must be 'unequivocally expressed,'

and the terms of such consent define the court's subject matter jurisdiction."

Id. The Federal Tort Claims Act constitutes "a limited waiver of the United

States's sovereign immunity." Id. The FTCA provides that the United States

shall be liable, to the same extent as a private individual, "for injury or loss of

property, or personal injury or death caused by the negligent or wrongful act

or omission of any employee of the Government while acting within the scope

of his office or employment[.]" 28 U.S.C. §1346(b)(1); see also 28 U.S.C. §2674.

Prior to commencing an FTCA action against the United States in federal court, however, a plaintiff must "first present[ ] the claim to the appropriate Federal agency" and receive a final denial "by the agency in writing and sent by certified or registered mail." 28 U.S.C. §2675(a). A claim is considered to be presented when the federal agency receives written notification of the alleged tortious incident and the alleged injuries, together with a claim for money damages in a sum certain. 28 C.F.R. §14.2(a). If the receiving federal agency fails to make a final disposition of the claim within six months from the time it is filed, that failure is "deemed a final denial of the claim" for purposes of commencing suit under the FTCA. 28 U.S.C. §2675(a).

The Third Circuit has held that "[i]n light of the clear, mandatory language of the statute, and [the] strict construction of the limited waiver of sovereign immunity by the United States, ... the requirement that the appropriate federal agency act on a claim before suit can be brought is jurisdictional and cannot be waived." Roma v. United States, 344 F.3d 352, 362 (3d Cir. 2003) (citing Livera v. First Nat'l Bank of New Jersey, 879 F.2d 1186, 1194 (3d Cir. 1989)).

In order to sue the United States in District Court and avoid violating the FTCA's express statute of limitations, a tort claim must be "presented in writing to the appropriate Federal agency within two years after such claim

accrues...." 28 U.S.C. § 2401(b); see also Bialowas, 443 F.2d at 1049. Section 2401's "time bar is strictly construed." Livera v. First Nat. State Bank of N.J., 879 F.2d 1186, 1195 (3d Cir. 1989). The claim accrues "when a plaintiff knows of both the existence and the cause of his injury." Miller v. Phila. Geriatric Center, 463 F.3d 266, 272 (3d Cir. 2006). Moreover, a tort claim is "presented" (thus tolling the running of the limitations period) when an executed SF-95 and a claim for money damages in a sum certain are received by the government agency. 28 C.F.R. §14.2.

Additionally, "[b]ecause the Federal Tort Claims Act constitutes a waiver of sovereign immunity, the Act's established procedures have been strictly construed." Livera v. First Nat'l State Bank, 879 F.2d 1186, 1194 (3d Cir. 1989).

On July 16, 2009, plaintiff was stabbed 22 times at USP-Lewisburg by other inmates in a recreation pen and taken to Geisinger Medical Center for abdominal surgery to repair his wounds. On March 19, 2010, plaintiff filed his first FTCA tort claim seeking $500,000 as damages for physical injuries caused by the stabbing. Plaintiff then amended his tort claim on July 19, 2010 increasing the amount of damages he sought to $750,000, to include claim for PTSD. On August 6, 2010, the BOP received plaintiff's amended tort claim. On September 22, 2010, the BOP issued its final denial of plaintiff's tort claim. Plaintiff then filed a reconsideration request in March 2011 and amended it in April 2011 and, he raised the issue of his "incisional hernia

secondary complication abdominal surgery July 16, 2009 for stabbing injuries in Lewisburg." The BOP denied plaintiff's reconsideration request on September 1, 2011. (Doc. 159-2). Thus, plaintiff has exhausted his administrative remedies prior to filing suit.

No doubt that "[a] [tort] claim under [the FTCA] may be amended at any time 'prior to final agency action or prior to the exercise of the claimant's option under 28 U.S.C. 2675(a),' which allows a claimant to file a complaint in district court." Rodriguez, 2018 WL 935429, *3 (citing 28 C.F.R. §14.2(c). "However, upon final agency decision, a claimant's damages in any lawsuit are limited to the amount filed in the administrative claim." Id. (citing 28 U.S.C. §2675(b)).

Section 2675(b) of Title 28, United States Code, provides:

Action under this section shall not be instituted for any sum in excess of the amount of the claim presented to the federal agency, except where the increased amount is based upon newly discovered evidence not reasonably discoverable at the time of presenting the claim to the federal agency, or upon allegation and proof of intervening facts, relating to the amount of the claim.

"The manifest purpose of the sum certain requirements of §2675 is to ensure that federal agencies charged with making an initial attempt to settle tort claims against the United States are given full notice of the government's potential liability." Rodriguez, 2018 WL 935429, *3 (citations omitted).

Here, even though plaintiff amended his claim for damages in his SF-95 prior to the BOP's denial, he contends that his present action should not be

limited to the amount he sought in his amended SF-95, i.e., $750,000, since the sum certain exception should apply to allow him to now seek damages at trial in the amount of $1.5 million.

Plaintiff argues that he is entitled to increase the amount of damages he seeks pursuant to §2675(b) because when he filed his amended tort claim it only sought damages for the injuries he suffered "in the immediate aftermath of the assault." He maintains that "[n]o doctor or medical personnel told [him] he would need further surgery to address the stab wounds or that there was a risk of incisional hernias developing in his abdomen where the surgeon made an incision to repair the stab wounds." In particular, plaintiff states that his "most severe and persisting injuries developed after he filed the amendment to his administrative tort claim in July 2010", namely, when "[he] developed abdominal incisional hernias following the July 16, 2009 initial surgery to repair his abdomen." He points out that he did not receive any medical treatment for his incisional hernias until "well after July 2010."

Plaintiff's BOP medical records show that he had his first surgery to repair incisional hernias caused by his July 16, 2009 initial surgery on December 13, 2011. (See Doc. 155-1). On January 30, 2016, plaintiff had a second surgery to repair incisional hernias resulting from his initial surgery. On April 30, 2019, plaintiff had a third surgery to repair incisional hernias related to his initial surgery. (See Doc. 155-1, Ex. 12, plaintiff's medical records from  University of Texas Medical System at Galveston).

Following his April 30, 2019 surgery, plaintiff required two more surgeries to address complications. In particular, after his third hernia repair surgery, plaintiff developed a hematoma at the site of the surgery that required an operation on May 1, 2019. Then on May 7, 2019, plaintiff had another surgery to correct a distended abdomen and a "high grade bowel obstruction" which were further complications from his April 30 surgery.

Plaintiff concludes by stating that "since his amended FTCA claim in July, 2010, [he] has undergone five different surgeries (three repair surgeries, and two additional surgeries to manage complications from this third repair surgery) over eight years."

In short, plaintiff contends that the increased *ad damnum* damages amount of his tort claim is based on newly discovered evidence not reasonably discoverable at the time he presented his amended claim to the BOP and, based on intervening facts relating to the amount of his amended claim. Thus, he argues that under 28 U.S.C. §2675(b) the court should allow him to increase his demand for damages against the government and to seek up to $1.5 million in damages.

The government argues that plaintiff's damages with respect to his FTCA action should limited to the sum certain he requested in his amended July 19, 2010 SF–95 tort claim, i.e., $750,000. The government argues that since plaintiff has not met the FTCA's strict statutory standard which requires "newly discovered evidence" or "proof of intervening facts", the statutory

exception under §2675(b) does not apply in this case. The government contends that when plaintiff filed his amended tort claim with the BOP, "over twelve (12) months had passed since the incident and both the severity and ongoing nature of [his] abdomen injuries were known and the likelihood of follow-up corrective surgeries was not unforeseeable." The government also states that:

> [plaintiff's] ongoing abdominal issues and surgeries are neither new nor intervening—in fact, [plaintiff's] medical records demonstrate he knew of the severity and ongoing nature of his abdominal injuries prior to the submission of his administrative claims. As result, the likelihood of [plaintiff's] follow-up corrective surgeries was not unforeseeable in 2010 due to [plaintiff's] numerous and extensive abdominal stab wounds, prior abdominal surgery and hospitalization, and continued abdominal pain. [Plaintiff's] latest administrative claim submission, submitted in April 2011, even specifically referenced his incisional hernia but did not seek to increase his damages.

Thus, the government contends that the court lacks jurisdiction to double the amount of plaintiff's damage claim or to award damages in excess of $750,000.

"Plaintiff has the burden of demonstrating that the exception [under §2675(b)] applies." Highhouse v. United States, 2017 WL 1187932, *9 n. 4 (W.D. Pa. Mar. 30, 2017) (citing Njos v. Kane, 2015 WL 999398, at *3 (M.D.Pa. Mar. 5, 2015) ("courts have uniformly placed the burden of proving ['newly discovered evidence' or 'intervening facts'] on the FTCA claimant")).

The Third Circuit has not yet adopted a "uniform standard [ ] for implementing the exception set forth in §2675(b)." Id. at *9; see also Njos,

2015 WL 999398, at *3. "Outside of the Third Circuit, federal courts have articulated various tests for determining whether an FTCA claimant has presented 'newly discovered evidence' or demonstrated the existence of 'intervening facts' within the meaning of § 2675(b)." Id.

The government urges the court to adopt the "worst-case prognosis" test and for support it cites to McLean v. United States, 2018 WL 623849, at *2-4 (M.D.Pa. Jan. 30, 2018), stating that the court "applied the 'worst-case prognosis' standard in finding that plaintiff's recent medical records do not constitute newly discovered evidence or intervening facts because they do not shed 'new light on the basic severity of the claimant's condition—that is, [they do not] materially differ [] from the worst-case prognosis of which the claimant knew or could reasonably have known when the claim was filed.'" (citations omitted). The government then compares the instant case to McLean and states that "[plaintiff's] follow-up corrective abdominal surgeries do not shed 'new light' on his ongoing abdominal issues, which date back to his stab wounds and original abdominal surgery in 2009", and that [plaintiff's] current condition and additional surgeries do not materially differ from the worst-case prognosis of what he knew or could have reasonably known in mid-2010."

The court will not apply the "worst-case prognosis" test. Under the "worst-case prognosis" test "a plaintiff must predict not only what is within the reasonable universe of injuries or damages, but must assume the worst-case

could occur in making a FTCA demand." Bravo-Garcia v. United States, 2015 WL 224625, at *5 (D.N.J. Jan. 15, 2015).

Nor will the court apply a "hybrid approach" that incorporates parts of the "worst case prognosis" standard. Rather, the court concurs with the courts in Highhouse and Njos and finds that the reasonably discoverable or reasonably foreseeable test adopted by the Second, Fourth, Sixth and Eighth Circuits should be applied to determine if "newly discovered evidence" or "intervening facts" are present. See Highhouse, 2017 WL 1187932, *12 ("this Court is of the view that the 'reasonably foreseeable' standard [in determining whether plaintiff's motion to amend the *ad damnum* clause should be granted] is more in keeping with the policy goals underlying §2675(b)."); Njos, 2015 WL 999398, at *3 (the court stated that the Fourth, Sixth, Eleventh, and D.C. Circuits have held that "a claim may be increased when the claimant either did not know or reasonably could not have known the severity of the injury at the time the FTCA tort claim notice was filed"); see also Bravo-Garcia v. United States, 2015 WL 224625, at *4 (D.N.J. Jan. 15, 2015); Troilo v. Michner, 2015 WL 12839014 (D.N.J. Nov. 17, 2015) (court applied "the reasonably discoverable test, adopted by the majority of those circuits to consider the issue of allowing plaintiffs to seek more damages than were administratively claimed in FTCA suits" and rejected the "worst-case prognosis" test). The court in Bravo-Garcia, 2015 WL 224625, at *6, found that the "reasonably foreseeable" test "focuse[d] on whether it was foreseeable that the plaintiff's

injuries would worsen beyond the original claim." As such, this court utilizes the "reasonably foreseeable/reasonably discoverable" test. *See also* <u>Michels v. United States</u>, 31 F.3d 686, 688 (8th Cir. 1994) (Eighth Circuit applied the "reasonably discoverable" test and stated that a "known injury can worsen in ways not reasonably discoverable by the claimant and his or her treating physician, [and] such 'newly discovered evidence' or 'intervening facts,' if convincingly proved, can warrant §2675(b) relief.") (citations omitted).

Similar to <u>Highhouse</u> and <u>Bravo-Garcia</u>, plaintiff Wiggins's medical history after the stabbing incident is "extensive and complex", as detailed above. As in <u>Highhouse</u>, 2017 WL 1187932, *12, plaintiff Wiggins has "endured a multiplicity of serious, chronic injuries and related symptoms as a result of his [July 16, 2009 initial surgery to treat the stab wounds], for which he has received continual treatment since [December 2011]." Further, the court finds that the numerous surgeries plaintiff had after his initial surgery and medical care were unforeseeable and not consistent with the severity and nature of his injuries in 2009-2010 when he submitted his tort claim and amendments. (<u>See</u> Doc. 155-1).

Two of the cases on which the government relies to oppose plaintiff's motion, namely, <u>McClean</u>, 2018 WL 623849 and <u>Harper v. United States</u>, 2015 WL 4920322 (M.D.Pa. Aug. 17, 2015), are both distinguishable from the present case since, unlike the plaintiffs in those cases, plaintiff Wiggins has met his burden by producing his BOP medical records and his medical

records from the University of Texas Medical System to show that his injuries

after his initial surgery to treat his stab wounds worsened, based on newly

discovered evidence regarding his injuries, i.e., incisional hernias, that were

not reasonably discoverable at the time he submitted his amended

administrative tort claim. In fact, in McClean, 2018 WL 623849, *3, the court

stated "Plaintiff has not submitted any newly discovered evidence that was not

reasonably discoverable at the time of presenting his claim to the federal

agency." The court finds that although plaintiff Wiggins knew of an incisional

hernia in April 2011 when he filed his reconsideration request, these hernias

did not develop into serious conditions requiring treatment, including the

stated surgeries, until well after the denial of his reconsideration request. In

this case, plaintiff did submit newly discovered evidence and intervening facts

not reasonably discoverable when he filed his amended administrative claim.

Further, the court does not find that plaintiff's instant motion is untimely as the

government suggest, since his subsequent surgeries occurred between

December 2011 to his most recent surgery in May 2019.

The court finds that plaintiff met his burden by producing sufficient

evidence to show that his injuries from the stabbing worsened over time, that

they were not foreseeable at the time he submitted his administrative claims,

that these injuries lead to his recent surgeries, beginning on December 13,

2011, to repair incisional hernias resulting from his initial surgery, and that

these newly discovered problems then required additional unforeseen

ongoing treatment through May 2019. As plaintiff points out, he was not aware that he would require several subsequent surgeries (i.e., 5 surgeries over 8-year period) when he filed his tort claim and amendments. He also states that his incisional hernias did not develop into serious conditions until well after the denial of his claims, and that he did not require any treatment for these hernias until years after his tort claims and reconsideration request were denied. Plaintiff also offered evidence to show that he suffered pain due to the unforeseen incisional hernias and surgeries required to treat them.

Thus, the court will allow plaintiff to amend his *ad damnum* clause based on the five subsequent surgeries he underwent which were related to his initial surgery to treat his stabs wounds and which were unforeseeable complications from his initial surgery. Plaintiff has sufficiently shown that his newly discovered evidence as to the many complications he would suffer after his initial surgery requiring several new surgeries was not reasonably discoverable at the time he filed his amended tort claim. (See Doc. 155-1, Ex. 9, Wiggins's Declaration). Plaintiff has also shown that his new evidence affects his assessment of damages he made when he filed his amended claim. In short, as the court found in Highhouse, 2017 WL 1187932, *12, "the record supports the conclusion that Plaintiff did not know, and could not have reasonably foreseen, the full extent and severity of his injuries as of the time that his administrative claim was pending." Additionally, the intervening facts and newly discovered evidence regarding plaintiff's injuries from the stab

14

wounds, as documented in his medical records, "could reasonably support a finding that plaintiff's injuries and resulting damages are substantially greater than reasonably could have been originally anticipated. "Id. at *14.

Finally, even though the court is granting plaintiff's motion, "it remains his ultimate burden to 'establish at trial that [his] injuries actually support an award in excess of the value[ ] stated in [his] FTCA claim[].'" Id. at *14 (citation omitted).

## III.   CONCLUSION

The plaintiff's motion to increase the *ad damnum* damages amount to $1.5 million with respect to his FTCA claim, (Doc. 154), will be **GRANTED**. An appropriate order shall issue.

s/ *Malachy E. Mannion*
**MALACHY E. MANNION**
**United States District Judge**

**Dated: August 29, 2019**

17-1333-01